### EVANS v. GROSSI.

1. Trusts—Courts.
   A testamentary trustee who is in doubt as to what action to take with respect to his trust may properly apply to a court for direction.

2. Wills—Intent—Courts.
   Generally courts have no power to make new wills for testators and disregard such lawful conditions as might be imposed, nor may they substitute ther own speculations for the clearly expressed will of a testator as his plain intent must prevail.

3. Trusts—Powers of Court of Equity.
   A court of equity may act in opposition to the provisions of a trust and do whatever is necessary, not only for the preservation of trust property but, also, whatever is necessary for the protection of the rights of beneficiaries and the promotion of their interests.

4. War—United States Citizens Resident in Enemy Nation.
   Citizens of the United States who are resident within the territory of a nation with which the United States is at

---

References for Points in Headnotes
[1]   54 Am. Jur., Trusts, § 282.
[2]   57 Am. Jur., Wills, § 1121.
[3]   54 Am. Jur, Trusts, §§ 284, 285.
[3]   Power of court to authorize sale of property contrary to provisions of trust.   77 A.L.R. 971.
[4]   56 Am. Jur., War, §§ 106, 107.
[6]   54 Am. Jur., Trusts, §§ 284, 485, 491, 628.
[7]   54 Am. Jur., Trusts, § 636.

war are subject to the trading with the enemy act (50 USCA, App. §§ 2, 3).

5. Trusts—Instructions—Supreme Court.

Where trustees were denied direction as to operation of trust by bill filed for such purpose in trial court, such relief is available to them in the Supreme Court on its *de novo* review.

6. Same—Impossibility of Compliance—Instructions by Court.

Under testamentary trust permitting trustees to make a payment of a stated sum when the *cestui que trust* became 30 years of age and payment was then impossible because the *cestui que trust,* a United States citizen, was resident in an enemy nation but circumstances oherwise permit payment of such sum and distribution of the corpus, the trustee is instructed to terminate the trust and convey the property.

7. Same—Courts—Costs.

On trustee's application to court for instructions relative to handling of trust in a contingency not provided for by the terms thereof and trust is ordered terminated, costs are chargeable against the corpus of the trust.

Appeal from Wayne; Jayne (Ira W.), J. Submitted January 12, 1949. (Docket No. 60, Calendar No. 44,307.) Decided April 11, 1949.

Bill by George W. Evans and others, trustees under the last will and testament of Emil P. Wenger, deceased, against Louise J. Grossi and others for construction of will and direction to trustees. Bill dismissed after hearing on merits. Plaintiffs appeal. Louise J. Grossi and others cross-appeal. Reversed.

*George E. Brand (George E. Brand, Jr.,* of counsel), for plaintiffs.

*George H. Hebert,* for defendants and cross-appellants.

*LeRoy W. Dahlberg (Samuel E. Gawne,* of counsel), guardian *ad litem.*

BUSHNELL, J. Emil P. Wenger, of Detroit, who died on June 2, 1916, created a trust in his last will and testament for the benefit of his four children, Edward Boyer Wenger, Paul Cedric Wenger, Alice Batting, and Louise J. Grossi. The residue of his estate was assigned to the testamentary trustees in 1918. All of the trusts have been terminated, except that for the benefit of Louise J. Grossi. The corpus of her trust amounted to over $1,000,000 in 1947. Wenger's will provided in part:

"Upon reaching the age of 25 years the *cestui que trust* shall receive $10,000 from the trust property. When the *cestui que trust* reaches the age of 30 years, if, in the opinion of the trustees said $10,000 has not been dissipated or squandered said *cestui que trust* shall receive a second $10,000. Such opinion of said trustees shall be evidenced in one way only, to-wit: By their voluntary payment of the second $10,000 to the *cestui que trust*. When the *cestui que trust* reaches the age of 35 years, if, in the opinion of the trustees, neither of said payments of $10,000 has been dissipated or squandered and both the first and second payments of $10,000 have not been lost by unfortunate investments and the second of said $10,-000 payments has been judiciously used or invested, then the trustees may execute suitable conveyances of all of the trust property then remaining in their hands to the *cestui que trust* and the trust property shall thereupon become his or her absolute property and the trust shall terminate. The opinion of the trustees required as last aforesaid shall be expressed in one way only, to-wit: By the voluntary execution and delivery to the *cestui que trust* of such conveyances and in the absence of such voluntary execution and delivery of such conveyances within six months after the *cestui que trust* reaches the age of 35 years the trust shall continue during the natural life of the *cestui que trust* and no longer; and upon the death of such *cestui que trust* the trust property shall be paid

over to his or her issue then living, share and share alike, if such there be."

Louise, who was born shortly before her father made his will in 1912, was married in 1935 to Piero Grossi, an Italian subject. She, however, retained her American citizenship, although she has resided with her husband in Italy since her marriage. Prior to the last war she visited America in 1935 and 1936, but after her return to Italy she was unable to leave again because of war conditions until December of 1945, when she brought her daughter, Virginia, now deceased, to Ann Arbor for an operation. She made another visit to the United States in 1947, and returned here again in 1948.

During her absence from America her business affairs were conducted by her attorney in fact, Eugene F. Wenger, of Ladue City, Missouri, her cousin, and prior thereto by his brother, A. W. Wenger.

When Mrs. Grossi reached the age of 25 on March 8, 1937, the testamentary trustees paid her the first $10,000 under the terms of the will. This sum was invested by Mrs. Grossi in municipal and Federal bonds, and remained so invested until March 15, 1948.

Mrs. Grossi attained the age of 30 in 1942. Prior to that date we were at war with Italy. On March 8, 1947, the 3 trustees certified that the second $10,000 was not paid to Louise "solely because it was prevented by governmental war regulations and restrictions." They further certified that:

"(a) Up to the respective times said Louise J. Grossi reached the ages of 30 and 35 years, and up to the date of this certificate, neither said first $10,000 so paid to said Louise J. Grossi, nor any part thereof, was or has been dissipated or squandered by her or lost by unfortunate investments, but, on the con-

trary, all of said $10,000 has been judiciously invested;

"(b) Said Louise J. Grossi (except as prevented by governmental war regulations and restrictions) was entitled to receive the second $10,000 pursuant to said section 4 of article 10 of said will;

"(c) Unless the nonpayment of said second $10,000 to said Louise J. Grossi is a bar to the execution and delivery to her of the conveyance terminating the trusts of which undersigned is one of said trustees under said will, the said conveyance should be executed and delivered to her."

The trustees then directed their attorney to prepare a bill in chancery, "reporting the situation to the court and praying a determination as to the right and power of said trustees to execute and deliver said conveyance to said Louise J. Grossi and to terminate said trusts, under the circumstances, and for all direction, instructions and relief as to the court shall seem proper."

At the trial, by consent of counsel, a copy of a telegram to the Attorney General of the United States, dated January 6, 1947, and his reply, were received in evidence, reading as follows:

"Please wire whether restrictions on cash distribution from Michigan testamentary trust estate to a beneficiary now living in Italy have been lifted comma the beneficiary having lived in Italy during the war comma having returned to the United States in December nineteen forty five but having returned to Italy in June nineteen forty six and being still there comma the beneficiary being a United States citizen comma the account never having been blocked. * * *

"Re inquiry on restrictions on cash distribution to beneficiary of trust living in Italy. This is matter for foreign funds control treasury department which

advises that generally restrictions on prewar Italian assets remain pending peace treaty."

Another exhibit consisting of a letter from the attorney in fact to trustees Hatch and Evans quoted from a letter from the vice-president of the Federal Reserve Bank of Chicago to the assistant treasurer of the Burroughs Adding Machine Company, under date of December 21, 1945, indicating that Mrs. Grossi's account "may be released from blocking upon her arrival in the United States" and referring to a General License No. 94, freeing her funds from the restrictions "of Executive Order 8389 to the same extent as that of a resident American citizen for all purposes, including remittances to her in Italy."

The trial judge held as a matter of law that Public Law 91 of the 65th Congress, enacted October 6, 1917, chap. 106, 40 Stat. at L. 411, 50 USCA, Appendix, § 1 *et seq.*, as amended, and known as the "Trading with the Enemy Acts," specifically exempted citizens of the United States. The trial court summed up its view of the facts as follows:

"On March 8, 1942, the trustees knew that she had left a large estate amounting to more than a quarter of a million dollars, including the $10,000 paid to her when she became 25, in this country in the hands of her attorney in fact, her cousin Mr. Wenger, and that he was administering her affairs ably and well, that he was finding means to send her funds to Italy, that he was receiving cash distributions for her for her account in America under license from the Treasury Department of Foreign Funds Control, and an examination of the law and governmental regulations would have disclosed that he had the lawful power to receive this $10,000 were it paid him.

"The trustees ask the court what to do now contending that the 'payment of the second $10,000 be-

ing illegal and/or impossible, the trustees were under no duty to make or attempt to make it.'"

The court reasoned that:

"This is the type of trust that reposes the highest confidence in the judgment of the trustees. It is a trust absolute. The court's judgment can be substituted for that of the trustee only when the trustee acts arbitrarily or unreasonably." Citing *Stein* v. *Safe Deposit & Trust Company of Baltimore,* 127 Md. 206 (96 Atl. 349), and authorities annotated in 32 A. L. R. 441 *et seq.*

The testamentary trustees have appealed from a decree dismissing their bill of complaint and seek review here *de novo* with instructions, directions and determination as follows:

"That under the circumstances (a) appellants were under no duty to pay or to attempt to pay the second $10,000 to Mrs. Grossi, her agent or to the Alien Property Custodian, (b) that payment to Mrs. Grossi's agent or to the custodian would have served no purpose in relation to any test of Mrs. Grossi's ability to handle that sum nor have any bearing on appellants' right to terminate the trust, and also determine whether the payment may now be made and upon what conditions and for what purpose, and (if the nonpayment be no bar to appellants' right to terminate the trust and convey the trust property to Mrs. Grossi) the trust be terminated and such conveyance be made."

Louise J. Grossi and certain contingent beneficiaries have cross-appealed and ask that a decree be entered ordering the termination of the trust by conveyance of the corpus thereof to Louise J. Grossi, or, in the alternative, "that the trustees be ordered to pay to Louise J. Grossi the second sum of $10,000 as if she had attained the age of 30 years on the date of receipt thereof, and that the said

trust be extended for a period of 5 years in order to enable the trustees to ascertain whether or not Louise J. Grossi is able to judiciously invest and conserve said sum, and that the trustees be authorized to make distribution of the corpus of this trust estate to Louise J. Grossi at the expiration of said 5-year period if they are satisfied that she has not squandered said sum of $10,000."

The guardian *ad litem,* representing unborn issue and unascertained heirs, seeks affirmance of the decree which would result in a continuance of the trust during the life of Mrs. Grossi.

In *Hackley Union National Bank* v. *Farmer,* 252 Mich. 674, the testamentary trustee was confronted with a problem involving a claimed revocation that was not delivered during the lifetime of the testator, and also one involving certain disclaimers that were filed by beneficiaries under a claimed mistake as to their antecedent existing legal rights. In the majority opinion in that case this significant statement appears:

"Plaintiff being in doubt properly applied to the courts for a judicial determination." (p. 691)

A number of authorities are cited and quoted in *Mills* v. *Michigan Trust Co.,* 124 Mich. 244, to the effect that courts have no power to make new wills for testators and disregard such lawful conditions as might be imposed, nor may they substitute their own speculations for the clearly expressed will of a testator. His plain intent must prevail. *Fraser* v. *Chene,* 2 Mich. 81; *Johnson* v. *Warren,* 74 Mich. 491; *Wales* v. *Templeton,* 83 Mich. 177; *Byrne* v. *Hume,* 84 Mich. 185; and *Stebbins* v. *Stebbins,* 86 Mich. 474.

However, it is pointed out in 2 Beach on Trusts & Trustees, § 758, p. 1742, quoted in *City of Detroit*

v. *Detroit United Railway,* 226 Mich. 354, 361, that there are circumstances under which a court of. equity may act in opposition to the provisions of a trust, and it may do whatever is necessary, not only for the preservation of trust property but, also, whatever is necessary for the protection of the rights of beneficiaries and the promotion of their interests. In the *City of Detroit Case, supra,* it is stated that "the leading case on this subject, one of the earliest decided and the most fully and well reasoned, is *Curtiss* v. *Brown,* 29 Ill. 201."

The *Curtiss Case* was also relied upon in *Young* v. *Young,* 255 Mich. 173 (77 A. L. R. 963), where the will directed that the trustees and life tenants could not sell or mortgage property, but were required to keep it intact. Subsequently the building on the premises was destroyed by fire and the proceeds of the insurance were insufficient to permit rebuilding, and taxes and other charges each year were far in excess of income. The Court said in that case p. 179:

"Frequently, through an over-abundance of caution, accompanied by a lack of foresight to provide for contingencies, the testator directs that his hand, though stilled by death, shall continue to conduct and control his property. When untoward and unforeseen conditions and exigencies arise, has a court of equity the inherent power to take into consideration not only what would have been the wishes of the testator, but also what will safeguard the trust fund for the heirs? Under the circumstances presented in this case, may the court decree such changes as common sense and good reason dictate? A long line of cases has established the principle that, when such an unusual exigency arises in regard to the method of handling the property or the corpus of the trust fund, it is the right and duty of a court of equity to authorize such changes."

See authorities therein cited at page 179, as well as 44 Harvard Law Review, p. 1025.

The quotation in the *Young Case* from *Curtiss* v. *Brown, supra,* is applicable here. The Illinois court said in the *Curtiss Case,* p. 230:

"Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. * * * From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery."

At the next term of court the principle stated in the *Young Case* was recognized but held inapplicable to the circumstances disclosed in *Post* v. *Grand Rapids Trust Co.,* 255 Mich. 436, 438.

Section 2 of the "Trading With the Enemy Act" reads in part as follows:

"The word 'enemy' * * * shall be deemed to mean: * * * (a) Any individual * * * of any nationality, resident within the territory * * * of any nation with which the United States is at war. * * * (c) Such other individuals * * * as may be natives, citizens, or subjects of any nation with which the United States is at war, other than citizens of the United States, wherever resident or wherever doing business, as the President * * * may, by proclamation, include within the term 'enemy.'"

It was made unlawful under section 3 of the act:

"(a) For any person in the United States, except with the license of the President, * * * to trade,

or attempt to trade, either directly or indirectly, with, to ＊. ＊ ＊ or for, or on account of, or on behalf of, or for the benefit of, any other person ＊ ＊ ＊ conducting or taking part in such trade, directly or indirectly, for, or on account of, or on behalf of, or for the benefit of, an enemy."

This language was construed by the Federal court, under certain circumstances, to affect citizens of the United States residing within the territory of a nation with which the United States was at war at the time. *United States* v. *Krepper* (C. C. A. N. J. 1946), 159 Fed. (2d) 958, 966, certiorari denied, 330 U. S. 824 (67 Sup. Ct. 865, 91 L. Ed. 1275).

A review *de novo* compels the conclusion that the testamentary trustees in 1942 were confronted with the impossibility of making the second $10,000 payment to Mrs. Grossi, so as to satisfy the requirements imposed by the terms of the will, and therefore could not express their opinion as therein defined. When she reached the age of 35 in 1947, they were again confronted with the question of voluntary execution and delivery of conveyances covering the entire corpus of the trust. They promptly and properly sought judicial approval by filing a bill of complaint, seeking the direction of a court of equity. That having been denied in the decree from which they have appealed, it is still within the power of this Court, under the authorities heretofore cited, to act *de novo* and, by its decree, instruct and direct them as to their authority.

Under the circumstances which existed in 1942 and in the light of the language of the will, it was at least questionable whether the trustees could properly pay the second $10,000 to Mrs. Grossi's agent or the alien property custodian for her benefit. Their failure to make such payment in 1942 does not prevent them from now terminating the trust. The record clearly indicates that the trus-

tees are of the opinion that Mrs. Grossi has in every respect complied with the requirements imposed by the testator, and the trustees are therefore authorized and directed to terminate the trust and convey the trust property to Louise J. Grossi.

Under the circumstances, costs should not be taxed against the appellees, but should be borne by the trustees, such costs being a proper charge against the corpus of the trust. The decree entered below is vacated and one may be entered here in conformity with this opinion, but without costs.

SHARPE, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.