*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RHEA BRODY LIVING TRUST, dated January 17, 1978, as amended.

---

ROBERT BRODY and JAY BRODY,

Intervenors-Appellants,

v

CATHY B. DEUTCHMAN,

Petitioner-Appellee,

and

MICHAEL BARTON, Special Fiduciary,

Intervenor-Appellee,

and

MARY M. LYNEIS, Trustee,

Appellee.

UNPUBLISHED
July 11, 2019

Nos. 343813; 345233
Oakland Probate Court
LC No. 2015-361379-TV

---

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In Docket No. 343813, intervenors, Robert Brody (Robert) and Jay Brody (Jay), claim an appeal as of right from a May 3, 2018 order that declared null and void a consent resolution and a listing agreement that were part of an effort by Robert and Jay to list for sale an apartment complex owned by Fountain Park Apartments Novi, LLC (FP Novi). In Docket No. 345233, intervenors, Robert and Jay, claim an appeal as of right from an August 10, 2018 order denying Robert and Jay's petition to amend a status quo order and authorize the sale of the apartment

-1-

complex owned by FP Novi. The appeals were consolidated. *In re Rhea Brody Living Trust*, unpublished order of the Court of Appeals, entered September 5, 2018 (Docket Nos. 343813 and 345233).[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

These consolidated appeals present another installment in a contentious family dispute regarding the Rhea Brody Living Trust (the Rhea Trust). This is not the first time this dispute has been involved in the appellate process. See *In re Rhea Brody Living Trust*, 321 Mich App 304; 910 NW2d 348 (2017) (*Brody I*), vacated in part and lv den in part 501 Mich 1094 (2018) (*Brody II*); *In re Rhea Brody Living Trust (On Remand)*, 325 Mich App 476; 925 NW2d 921 (2018) (*Brody III*), vacated in part, ____ Mich ___ (2019). Robert is Rhea's husband. *Brody III*, 325 Mich App at 479. Petitioner, Cathy Deutchman (Cathy), is the daughter of Rhea and Robert. *Id*. Jay is the son of Rhea and Robert. *Id*. at 480 n 1. As we have previously noted regarding the basic underlying circumstances of this case,

> The convoluted factual background of this case can best be boiled down to the fact that Rhea became mentally incapacitated as a result of dementia, and Robert, who is also a beneficiary of the trust, began acting as successor trustee. Allegations were made that Robert took actions that were detrimental to the trust, contrary to Rhea's intent, and favored Jay Brody and his heirs to the detriment of Cathy and her heirs. [*Id*. at 480.]

Cathy filed a petition seeking, among other things, Robert's removal as trustee of the Rhea Trust, temporary court supervision of the trust, and reversal of damage she alleged had been caused to the interests of the trust by Robert. *Brody I*, 321 Mich App at 311. *Brody I* involved an appeal of the probate court's order granting partial summary disposition to Cathy. *Id*. at 308. That order, in relevant part, "resolved claims relating to two family businesses, Brody

---

[1] Successor trustee Mary Lyneis and petitioner Cathy Deutchman initially raised challenges to this Court's jurisdiction over these appeals. Lyneis asserted in her appellate briefs that this Court did not have jurisdiction over either appeal because neither of the orders appealed by intervenors were final orders appealable as of right, although Cathy appeared to concede in her appellate brief in Docket No. 345233 that the August 10, 2018 order was a final order appealable by right. However, both Lyneis and Deutchman abandoned these challenges at oral argument. All of the parties seemed to believe that this Court had essentially already, at a minimum, granted leave to appeal as a result of our dismissal of intervenors' separately filed application for leave to appeal the May 3, 2018 order. In dismissing that application for leave to appeal, we stated: "The Court orders that the application for leave to appeal is DISMISSED as moot in light of the claim of appeal filed in Docket No. 343813. Appellants may raise the issues presented in this application in their claim of appeal." *In re Rhea Brody Living Trust*, unpublished order of the Court of Appeals, entered June 20, 2018 (Docket No. 343768). In light of the discussion at oral argument, we will treat these appeals in Docket Nos. 343813 and 345233 as applications for leave to appeal, grant leave, and consider the substantive issues raised by the parties. *In re Ballard*, 323 Mich App 233, 235 n 1; 916 NW2d 841 (2018).

Realty No. I, LLC, and Macomb Corporation, declared Rhea Brody disabled pursuant to the terms of the trust, and removed Robert as successor trustee of the trust." *Id*. This Court affirmed in part and reversed in part. *Id*. We held, among other things not pertinent to the instant discussion, that the probate court had subject-matter jurisdiction and that Cathy had standing to pursue the issues in her petition. *Id*. at 309, 314, 318. In *Brody II*, 501 Mich at 1094, our Supreme Court vacated this Court's standing analysis in *Brody I* and remanded the case to this Court for reconsideration of its standing analysis. Our Supreme Court denied leave to appeal in all other respects. *Id*. On remand, this Court addressed the questions it was instructed to consider by our Supreme Court, and it reaffirmed its prior conclusion that the probate court did not err in concluding that Cathy had standing as a petitioner in this case. *Brody III*, 325 Mich App at 481, 492.

The present appeals arise out of a dispute over whether to sell an apartment complex owned by FP Novi. The Rhea Trust holds a 98% interest in Brody Realty No. I, LLC (Brody Realty). At the time of the lower court proceedings that led to these appeals, Robert was the sole manager of Brody Realty. Brody Realty owns 50% of FP Novi. Brody Realty (managed by Robert) and James Deutchman's (James) trust are the managers of FP Novi. James is Cathy's husband. The Class A members (i.e., the members with voting rights) of FP Novi are Brody Realty, Jay's trust, Cathy's trust, and James's trust,[2] with Brody Realty holding a 50% share of the voting interest. A dispute arose in which Robert and Jay wanted to sell the FP Novi apartment complex, whereas Cathy, James, and the successor trustee of the Rhea Trust (Mary Lyneis) wanted to refinance the mortgage on the FP Novi apartment complex rather than sell the property. Apparently, there was a commercial mortgage on the property that was set to mature on July 1, 2018, and the entire current loan balance (which was significant) needed to be paid off or refinanced by that date to avoid being in default. Lyneis filed a petition for instructions on how to proceed on the matter.

Following an April 12, 2018 hearing, the probate court entered an order the same day appointing Lyneis as a special manager of Brody Realty and a co-manager of FP Novi for the purpose of refinancing the FP Novi mortgage. The order also stated that the probate court made "no decision regarding the retained earnings of or the sale of Fountain Park Novi."

The probate court stated on the record during the April 12, 2018 hearing that it was in the "best interest of the trust to appoint Mary Lyneis as a special manager for the purpose of pursuing financing that will prevent the default [on the mortgage]." The probate court explained that it was putting Lyneis in Robert's place as manager of Brody Realty solely with respect to the narrow issue of having authority to pursue refinancing, which would require working with James as the other manager of FP Novi in this pursuit. The probate court clarified that this was the extent of the authority granted to Lyneis as special manager of Brody Realty under the court's

---

[2] Although Jay's, Cathy's, and James's respective trusts are members of FP Novi, the appellate briefs often refer to these individuals as the members, and this makes no practical difference for the purpose of the issues on appeal. Likewise, although James's trust is technically a manager of FP Novi, James himself is often referred to as a manager.

ruling.  The probate court also made comments at the April 12, 2018 hearing to the effect that the FP Novi property could be marketed to determine what offers to purchase would be made and if any such offers were in the best interests of the Brody Trust itself rather than any particular individual involved in this case, with the understanding that Brody Realty and James were both managers of FP Novi and that Robert and James would thus have to agree on matters such as retaining a broker to market the property.  Essentially, it appears that the probate court permitted attempts to refinance the property and attempts to market the property for sale to be pursued simultaneously.

On April 27, 2018, Lyneis and Cathy each filed motions requesting relief on the ground that Robert and Jay had violated the probate court's November 8, 2016 status quo order and disregarded the court's April 12, 2018 order.  The November 8, 2016 status quo order had provided in relevant part as follows:

> 1.  Robert Brody or Jay Brody shall not sell, pledge, transfer or otherwise dispose of any interest the Rhea Brody Trust ("Trust") has or may have in Brody Realty No. 1, LLC or cause Brody Realty No. 1, LLC ("Brody Realty") to sell, pledge, transfer or otherwise dispose of any of its assets, including but not limited to, any membership or other interest Brody Realty has or may have in . . . Fountain Park Apartments Novi, LLC [(FP Novi)], . . . without first giving Mary M. Lyneis (the "Successor Trustee") 30 days written notice of the proposed action.  If the Successor Trustee objects to the proposed action, she shall file a motion within 30 days of such written notice before the Court stating the specific reasons as to why the proposed action is not in the best interest of the Trust.  If a motion is filed, the proposed action shall not be taken until the matter is decided by the Court. . . .

> * * *

> 14.  Robert Brody or Jay Brody shall not take any material action, such as changing the management structure and/or to remove any manager of Brody Realty or any entity in which Brody Realty owns an interest, without first providing thirty (30) days advance written notice to the Successor Trustee and to counsel for the Petitioner [i.e., Cathy] of such proposed action.  In order to object to such proposed action, the Successor Trustee and/or the Petitioner shall file a motion within thirty (30) days of such written notice stating specific reasons why the proposed action is not in the best interest of the Trust.  If a motion is filed, the proposed action shall not be taken until the matter is decided by the Court. . . .

> * * *

> 17. Nothing in this Order is intended to alter the rights of the parties with respect to the Trust or intended to be an adjudication of the propriety of any past, present or future expenditures of the Trust.  In addition, nothing set forth in this Order is intended to prohibit any party from seeking a modification of this Order, since circumstances may change during the course of this case.

According to the April 27, 2018 motions filed by Lyneis and Cathy, Robert and Jay had adopted a consent resolution on April 23, 2018, authorizing Brody Realty to act as sole manager of FP Novi in order to list FP Novi's apartment complex for sale. The consent resolution was signed by both Robert and Jay, and the resolution stated that this constituted a majority interest of the voting members. Pursuant to this consent resolution, FP Novi entered into a listing agreement with Berkadia Real Estate Advisors (Berkadia) to list the property for sale. The property was listed for sale, and an auction was set up with a May 8, 2018 deadline for first and final bids. Lyneis only learned of the auction from third parties, not from Robert or Jay. Lyneis and Cathy alleged that Robert and Jay had failed to provide 30 days' written notice before taking these actions, in violation of the status quo order, thus depriving Lyneis of an opportunity to make objections so that the probate court could decide how to proceed.

At a May 3, 2018 hearing, the probate court found that Robert and Jay's consent resolution had effectively removed James as a manager of FP Novi without providing 30 days' written notice, in contravention of the status quo order. The probate court entered an order on May 3, 2018, declaring the consent resolution and the Berkadia listing agreement null and void. The court explained during the hearing that it was exercising its authority to enforce its own order of November 8, 2016, and that "the decision to list the property in this fashion is null and void because it was not done—it was done in contravention of the status quo order and not done in accordance with even the operating agreement and not in the best interest of Brody Realty or the Rhea Brody Trust." Robert and Jay then filed a claim of appeal from the May 3, 2018 order in Docket No. 343813, raising various challenges to the probate court's decision to declare the consent resolution and listing agreement null and void.[3]

On May 11, 2018, Robert and Jay filed a petition in the probate court seeking to amend the status quo order and to authorize the sale of the FP Novi apartment complex. Following an evidentiary hearing that extended over several days, the probate court entered an order on August 10, 2018, denying Robert and Jay's petition for the reasons stated on the record. The probate court, in announcing its ruling on the record at the conclusion of the evidentiary hearing, had explained that it was denying the petition on the ground that Robert and Jay had not shown a "sufficient basis" to justify "amend[ing] the status quo order and permit[ting] the sale . . . at this time." In reaching this conclusion, the probate court noted that granting the request of Robert and Jay would have resulted in "a substantial benefit to primarily Robert Brody and Jay Brody" and that such was consistent with the allegations in the initial petition that had originally brought the case before the probate court, which were issues that were pending to be decided by a jury trial. Robert and Jay filed a claim of appeal from the August 10, 2018 order in Docket No. 345233, raising arguments similar to those in Docket No. 343813.

II. PROBATE COURT'S SUBJECT MATTER JURISDICTION

---

[3] As previously noted, Robert and Jay also filed an application for leave to appeal this order in Docket No. 343768, and this Court dismissed the application. *In re Rhea Brody Living Trust*, unpub order (Docket No. 343768).

Robert and Jay's appellate arguments center around their primary contention that the probate court did not have subject-matter jurisdiction to determine the issues in dispute related to listing the FP Novi apartment complex for sale and seeking authorization to sell the apartment complex. Robert and Jay argue that the probate court lacked subject-matter jurisdiction because this dispute regarding the actions and internal affairs of FP Novi should have been resolved in the business court, which is part of the circuit court, rather than in probate court.

Whether a lower court has subject-matter jurisdiction is reviewed de novo as a question of law. *White v Harrison-White*, 280 Mich App 383, 387; 760 NW2d 691 (2008). "Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 528; 695 NW2d 508 (2004) (quotation marks and citation omitted). This issue also presents questions of statutory interpretation, which involve legal questions that we review de novo. *White*, 280 Mich App at 387. "The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *Mericka v Dep't of Community Health*, 283 Mich App 29, 38; 770 NW2d 24 (2009).

"The probate court is a court of limited jurisdiction and derives its power from statutes." *Brody I*, 321 Mich App at 309.[4] MCL 700.1302 provides, in relevant part:

The [probate] court has exclusive legal and equitable jurisdiction of all of the following:

* * *

(b) A proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to, proceedings to do all of the following:

* * *

(*v*) Determine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.

---

[4] Our Supreme Court in *Brody II* vacated the section of this Court's opinion in *Brody I* analyzing the standing issue. *Brody II*, 501 Mich 1094. But the remainder of this Court's opinion in *Brody I*, including the section analyzing the subject-matter jurisdiction issue was left intact since our Supreme Court in *Brody II* denied leave to appeal in all other respects. *Id*. *Brody I*, 321 Mich App at 309-314, involved a subject-matter jurisdiction argument similar to the one raised in the instant appeal, and we find the analysis in *Brody I* instructive.

(*vi*) Instruct a trustee and determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right.

In addition, MCL 700.1303(1) provides, in pertinent part:

(1) In addition to the jurisdiction conferred by [MCL 700.1302] and other laws, the [probate] court has concurrent legal and equitable jurisdiction to do all of the following in regard to an estate of a decedent, protected individual, ward, or trust:

(a) Determine a property right or interest.

* * *

(h) Hear and decide a claim by or against a fiduciary or trustee for the return of property.

(i) Hear and decide a contract proceeding or action by or against an estate, trust, or ward.

MCL 700.1303(3) states that "[t]he underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's, a protected individual's, a ward's, or a trust estate by consolidating the probate and other related actions or proceedings in the probate court."

Regarding the creation of the business court, MCL 600.8033(1) states that "[e]very circuit with not fewer than 3 circuit judges shall have a business court . . . ." See also MCL 600.8037(1) (providing for the assignment of circuit court judges to the business court). MCL 600.8035(1) states that a "business court has jurisdiction over business and commercial disputes in which equitable or declaratory relief is sought or in which the matter otherwise meets circuit court jurisdictional requirements." "An action must be assigned to a business court if all or part of the action includes a business or commercial dispute." MCL 600.8035(3). A "[b]usiness or commercial dispute" includes, among other things,

[a]n action in which 1 or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members of a limited liability company or a similar business organization, directors, officers, agents, employees, suppliers, guarantors of a commercial loan, or competitors, and the claims arise out of those relationships. [MCL 600.8031(1)(c)(*ii*).]

Further, MCL 600.8031(2) provides, in relevant part:

(2) Business or commercial disputes include, but are not limited to, the following types of actions:

-7-

(a) Those involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

* * *

(c) Those involving the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers.

* * *

(g) Those involving commercial real property.[5]

The Legislature has provided that business or commercial disputes do *not* include proceedings under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. See MCL 600.8031(3)(e); *Brody I*, 321 Mich App at 311. MCL 600.8035(3) states, in relevant part, that "[a]n action that involves a business or commercial dispute that is filed in a court with a business docket must be maintained in a business court although it also involves claims that are not business or commercial disputes, including excluded claims under [MCL 600.8031(3)]."[6]

In addition, MCL 450.4515(1), a provision of the Michigan Limited Liability Company Act (LLC Act), MCL 450.4101 *et seq*., provides, in relevant part:

(1) A member of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member. If the member establishes grounds for relief, the circuit court may issue an order or grant relief as it considers appropriate . . .

---

[5] We have quoted from the current version of MCL 600.8031. The statute was amended effective on October 11, 2017, and the amendments apply to actions commenced on or after the effective date of the amendments. See 2017 PA 101. None of the amendments affect our analysis or conclusion regarding this issue. We note that, under the prior version of MCL 600.8031(1)(c), the singular term "business or commercial dispute" was defined to include "[a]n action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise." Cf. 2017 PA 101 with 2012 PA 333. This provision now appears in MCL 600.8031(2)(a).

[6] We have quoted from the current version of MCL 600.8035. The statute was amended effective on October 11, 2017, and the amendments apply to actions commenced on or after the effective date of the amendments. See 2017 PA 101. None of the amendments affect our analysis or conclusion regarding this issue. It appears that the only amendment regarding MCL 600.8035(3) was to replace the word "shall" with "must." Cf. 2017 PA 101 with 2012 PA 333.

In this case, the proceedings regarding whether to sell or list for sale the FP Novi property arose in the context of the administration of a trust and thus qualify as the kind of case over which the probate court may exercise judicial power. See MCL 700.1302(b). Robert and Jay note that the Rhea Trust was not a member of FP Novi. But the Rhea Trust owned 98% of Brody Realty, which was a 50% owner of FP Novi and one of two managers of FP Novi. And Robert was the manager of Brody Realty, and thus a manager of FP Novi, as well as a former trustee of the Rhea Trust who was removed by the probate court and a beneficiary of the Rhea Trust. See *Brody I*, 321 Mich App at 320. The Rhea Trust was thus interested in the possible sale of the FP Novi property.

A somewhat analogous situation was addressed in *Brody I*. In *Brody I*, Robert had sold Brody Realty's membership interest in Brittany Park Apartments, LLC (Brittany Park), to Jay's trust and Jay's two children. *Id*. at 320. The probate court found no genuine issue of material fact regarding Robert's breach of fiduciary duty owed to the Rhea Trust. *Id*. at 318-319. On appeal, Jay argued "that the Brittany Park property was not an asset of the Rhea Trust . . ." *Id*. at 321. Rejecting Jay's argument, this Court stated: "Brittany Park was owned by Brody Realty. The Rhea Trust owned 98% of Brody Realty, and the Rhea Trust was therefore interested in the Brittany Park sale." *Id*.

Likewise, here, the Rhea Trust was interested in the possible sale of the FP Novi property given that the Rhea Trust owned 98% of Brody Realty, which in turn held a 50% membership interest in FP Novi and was a manager of FP Novi. Further, the probate court carefully constrained its authority over FP Novi to that of supervising the role of Brody Realty, including by emphasizing that the court exercised no authority over James, who was a member and a manager of FP Novi. The probate court possessed authority to preserve assets in which the Rhea Trust held an interest under the circumstances present in this case. See MCL 700.1309(b) (authorizing a probate court to "[e]njoin a person subject to the court's jurisdiction from conduct that presents an immediate risk of waste, unnecessary dissipation of an estate's or trust's property, or jeopardy to an interested person's interest."). The probate court's resolution of issues concerning the possible sale or listing for sale of the FP Novi property constituted the determination of a question that arose in the administration of the Rhea Trust. See MCL 700.1302(b)(*v*). As was true in *Brody I*, 321 Mich App at 311, the instant matter was initiated under various provisions of EPIC and to the extent various transactions involving Brody family businesses arose during the course of the probate court proceedings, they arose "only tangentially" to the primary issues involving the trust itself. Resolving such issues within the context of the ongoing trust proceedings in the probate court is consistent with the purpose of the concurrent jurisdiction statutorily conferred on the probate court to "simplify the disposition of an action or proceeding involving . . . a trust estate by consolidating the probate and other related actions or proceedings in the probate court. MCL 700.1303(3). Because the Rhea Trust was interested in the possible sale of the FP Novi property, the instant dispute was part of the administration of a trust and thus fell within the kind or class of cases over which the probate court possessed subject-matter jurisdiction.

The probate court also had authority to enforce its status quo order requiring Robert and Jay to provide notice and to comply with certain procedures before causing Brody Realty to sell any interest held in FP Novi and before removing a manager of any entity in which Brody Realty owned an interest. See MCL 600.847 ("In the exercise of jurisdiction vested in the probate court

-9-

by law, the probate court shall have the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions."); *In re Reiswitz*, 236 Mich App 158, 172; 600 NW2d 135 (1999) (discussing a probate court's authority to enforce its orders).

Further, the proceedings here did not fall within the mandatory jurisdiction of the business court. As noted, the Legislature has specifically provided that business or commercial disputes do *not* include proceedings under EPIC. See MCL 600.8031(3)(e); *Brody I*, 321 Mich App at 310-311. As explained, the proceedings here involve the administration of a trust and therefore qualify as proceedings under EPIC. The case thus does not fall within the category of cases over which the business court has mandatory jurisdiction. And this conclusion is not altered by the fact that MCL 600.8035(3) states, in relevant part, that "[a]n action that involves a business or commercial dispute that is filed in a court with a business docket must be maintained in a business court although it also involves claims that are not business or commercial disputes, including excluded claims under [MCL 600.8031(3)]." As explained in *Brody I*, this statutory language does not require "every case affecting or affected by a business matter, including a trust case, to be brought before the business court." *Brody I*, 321 Mich App at 311. Rather, the language of MCL 600.8035(3) reflects "a legislative intent to retain cases originally filed in the business court for the entirety of the proceedings, regardless of whether the business dispute also involves, or comes to involve, excluded subject matter." *Brody I*, 321 Mich App at 312.

> To read [MCL 600.8035(3)] as requiring every action affecting a business to be originally filed in the business court or transferred to the business court upon the inclusion of matters affecting a business would be to read language into the statute that simply does not exist and to brush aside the Legislature's goal of accuracy and efficiency by imposing on the business courts mandatory jurisdiction over a seemingly endless variety of nonbusiness-related matters. [*Brody I*, 321 Mich App at 312.]

Moreover, depriving the probate court of jurisdiction in any trust case that involves or affects a business transaction, even if only tangentially, would be inconsistent with the Legislature's broad grant of exclusive jurisdiction to the probate court over trust matters. *Id*. at 313. The more specific grant of jurisdiction to the probate court over trust matters in MCL 700.1302 and MCL 700.1303 controls over the inclusion of trust-related matters within the jurisdiction of the business court over business disputes under MCL 600.8035(3). *Brody I*, 321 Mich App at 313-314.

Robert and Jay's argument that the LLC Act required this matter to be heard in circuit court is also unavailing. Robert and Jay rely on MCL 450.4515(1), which provides a remedy in circuit court when managers or members in control of an LLC engage in illegal or fraudulent acts or willfully unfair and oppressive conduct. Robert and Jay offer no convincing textual analysis to establish that the remedy set forth in MCL 450.4515(1) was somehow intended to divest the probate court of subject-matter jurisdiction over the administration of a trust, and we can discern no basis for such a conclusion in the statutory language. Indeed, such a conclusion would contravene the broad grant of exclusive jurisdiction to the probate court over trust matters as delineated earlier in this opinion. As explained throughout this opinion, the instant dispute arose in the context of the administration of the Rhea Trust, which held a 98% ownership interest in

Brody Realty, which in turn held a 50% membership interest and a managerial role in FP Novi. The Rhea Trust was interested in the possible FP Novi sale, and the present dispute thus falls within the probate court's exclusive jurisdiction over trust matters.

Next, in Docket No. 343813, Robert and Jay argue that by invalidating the consent resolution and Berkadia listing agreement, the probate court improperly overrode the decision of the majority members of FP Novi to list the FP Novi property for sale. Whether Robert and Jay have articulated a correct understanding of the probate court's decision presents a question concerning the interpretation of the probate court's May 3, 2018 order, which is a question of law that is reviewed de novo. See *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008) ("Interpreting the meaning of a court order involves questions of law that we review de novo on appeal.").

This issue is moot because the probate court's invalidation of the consent resolution and Berkadia listing agreement was effectively superseded by the probate court's subsequent order of August 10, 2018, denying Robert and Jay's petition to authorize the sale of the FP Novi property. Aside from their unsuccessful challenge to the probate court's subject-matter jurisdiction, Robert and Jay have presented no appellate argument challenging the merits of the probate court's August 10, 2018 order denying Robert and Jay's petition to authorize the sale of the property. It is impossible to fashion a remedy for the invalidation of the consent resolution and Berkadia listing agreement given that the probate court has subsequently refused to allow the property to be sold, a decision that Robert and Jay have not challenged on the merits. Any ruling by this Court regarding whether the probate court properly invalidated the consent resolution and listing agreement would therefore have no practical effect on the controversy, and the issue is moot. See *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016) ("A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy.") (quotation marks and citation omitted).

In any event, Robert and Jay have misconstrued the probate court's May 3, 2018 decision. The probate court did not override a decision of the majority members of FP Novi. Rather, the probate court properly exercised its authority to enforce the status quo order and direct the actions of Brody Realty, which was 98% owned by the Rhea Trust.[7] Brody Realty held the decisive 50% membership vote and a managerial role in FP Novi. Robert and Jay's argument that there was a decision by the majority members of FP Novi seems to assume that the probate court was somehow required to allow Robert, a beneficiary of the Rhea Trust, to make unilateral decisions on behalf of Brody Realty despite the Rhea Trust's interest in Brody Realty. In short, Robert and Jay essentially assume that the probate court lacked jurisdiction to supervise

---

[7] On this point, the probate court explained that it was enforcing the status quo order and that "as a result of Robert Brody being manager of Brody Realty and not acting in an individual capacity, this court has authority through the trust to control Robert Brody's actions if they do not appear to be in the best interest of the Rhea Brody Trust." The court found that Robert's actions appeared designed to serve Jay's interest rather than what was in the best interest of the Rhea Trust.

Brody Realty's role in deciding whether to sell the FP Novi property, a premise that is incorrect in light of our analysis earlier in this opinion.

Finally, Robert and Jay argue in Docket No. 343813 that the probate court erred in concluding that Robert and Jay violated the status quo order. To the extent this issue requires interpretation of the probate court's status quo order, the issue involves a question of law that is reviewed de novo. *Silberstein*, 278 Mich App at 460. A probate court's factual findings are reviewed for clear error. *In re Koehler Estate*, 314 Mich App 667, 673-674; 888 NW2d 432 (2016). Clear error exists when the reviewing court is definitely and firmly convinced that a mistake was made. *Id*. at 674.

The probate court's invalidation of the consent resolution and listing agreement was the remedy imposed for the violation of the status quo order. As explained earlier, the invalidation of those documents has been effectively superseded by the probate court's subsequent order of August 10, 2018, denying Robert and Jay's petition to authorize the sale of the FP Novi property. Robert and Jay have made no appellate argument challenging the merits of the probate court's August 10, 2018 order, aside from their unsuccessful challenge to the probate court's subject-matter jurisdiction. Any ruling by this Court regarding whether the probate court properly invalidated the consent resolution and listing agreement would therefore have no practical effect on the controversy, and the issue is moot. See *Garrett*, 314 Mich App at 449.

In any event, the probate court did not err in concluding that Robert and Jay violated the status quo order. Paragraph 14 of the status quo order prohibited Robert or Jay from changing the management structure or removing a manager of Brody Realty or any entity in which Brody Realty owns an interest, without first following the 30-day notice procedure set forth in the status quo order. The probate court found that the consent resolution signed by Robert and Jay effectively removed James as a manager of FP Novi without providing the requisite 30 days' written notice. The language of the consent resolution supports this conclusion. The consent resolution authorized Brody Realty "to act as the sole [m]anager with authority to immediately execute" the Berkadia listing agreement. By authorizing Brody Realty to act as the sole manager, Robert and Jay effectively removed James as a manager of FP Novi. Robert and Jay did not provide 30 days' written notice before taking this action. Accordingly, a violation of the status quo order occurred. The probate court properly exercised its authority to enforce its status quo order. See MCL 600.847; *Reiswitz*, 236 Mich App at 172 (a probate court has authority to enforce its orders).

In light of our disposition of this matter, there is no need to address the alternative arguments for affirmance put forth by Lyneis and Cathy. There is no further relief that we can grant, and these alternative arguments are moot. See *Garrett*, 314 Mich App at 449.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello