*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EDWARD & ELAINE JAYE TRUST.

---

AMIR E. ABU-AITA, Trustee/Conservator,

        Appellee,

v

BYRON P. GALLAGHER, JR.,

        Appellant/Cross-Appellee,

and

CHRIS JAYE, KLUG LAW FIRM, BUHL, LITTLE, LYNWOOD & HARRIS, PLC, RAYMOND G. BUFFMYER, PC, and FRASER, TREBILCOCK, DAVIS & DUNLAP, PC,

        Appellees/Cross-Appellants.

UNPUBLISHED
February 24, 2022

No. 355321
Eaton Probate Court
LC No. 16-052573-TV

---

Before: GLEICHER, C.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

The Estates and Protected Individuals Code (EPIC) prescribes the conditions under which a trust may be terminated and the procedures for doing so. Notice must be given to various parties and the settlor's intentions respected. The probate court did neither here. The probate court hastily terminated the trust without notice and left the now legally incompetent settlor intestate. We reverse and remand for further proceedings.

## I. BACKGROUND

Elaine Jaye and her late husband Edward set up a revocable living trust to provide for their care in old age and to direct the distribution of their estate upon their passing. The trust allegedly

-1-

contained $5 million in assets, including businesses operated by Edward and the Jayes' son Chris, and several pieces of real property. The Jayes' estate plan provided for specific gifts to individuals who otherwise would not be deemed heirs. The Jayes also provided for their three children to each receive a third of their remaining assets, with the inheritance of their daughter Karen remaining in trust with periodic payments made to her. Edward passed away in 2013 in Nevada. In 2010, Chris successfully petitioned for guardianship of Elaine in a Nevada court.

At some point Elaine moved to Michigan to live with Karen and Karen was named as Elaine's successor guardian and conservator. In 2016, Karen filed a petition to remove the trustees of her mother's trust, including Chris. Karen accused Chris of spending large amounts of trust funds for his personal benefit and expending a suspicious amount of attorney fees in the Nevada guardianship action. Chris accused Karen of seeking control of the trust to use the proceeds for her own benefit.

The battle between the siblings dragged on for four years. On February 1, 2017, the parties entered a stipulated order for payment of various attorney and accountant fees from trust funds. They also agreed that the trust would cover the fees of the bankruptcy trustee connected with a business under the trust's umbrella. These bills were not quickly paid, however. Given the contentious nature of these proceedings, the probate court struggled to find an independent person willing to serve as trustee. In mid-2018, the court appointed Byron P. Gallagher, Jr., to fill the role. The attorneys promised payment in the 2017 agreement then submitted their bills to Gallagher for consideration. By early 2019, the attorney fees submitted to the trustee for payment totaled over $100,000.

The appointment of the independent trustee did not calm the waters. Karen and Chris protested when Gallagher attempted to sell trust property to provide for Elaine's care, despite that Gallagher secured offers well above the assessed values. Karen eventually won a dispute to move with Elaine into a Lansing home owned by the trust, but was denied the right of first refusal when the home would later be sold upon her mother's death. Karen and Chris challenged the fee amounts requested by attorneys other than their own.

Karen ultimately sought to have Gallagher removed as trustee for breach of fiduciary duty and to have the trust "dissolved." Karen believed that the trust was being used to control her mother's assets, leaving insufficient funds for Elaine's support. Chris asserted that Karen was trying to remove the protections of the trust so she could invade their mother's assets. After several hearings, the parties finally reached a settlement in December 2019 regarding certain partnership interests owned by the trust, addressing various personal and real property issues, and describing how the accounting should be performed and funded. They agreed that all issues concerning the validity of the trust had to be raised by December 2020 or would be deemed waived. The court's order entering the settlement specifically referenced the 2017 stipulated order regarding attorney fees and provided that all attorneys must "file a petition by December 30, 2019 stating their claim and then present evidence at an evidentiary hearing . . . establishing how their services benefitted the Trust, Guardianship, and/or Conservatorship and the reasonableness of the fees for their services."

The attorneys all filed their petitions in a timely fashion, although they contended that this requirement violated the 2017 stipulation. Then the pandemic struck and delayed the proceedings

by several months.  A hearing was scheduled to consider those petitions in September 2020.  Four other petitions were scheduled to be heard at the same time: a petition for fees filed by Karen's attorney, Chris's petition seeking contact with his mother, Chris's petition for amendment of the December 2019 settlement, and an objection by Chris to the latest accounting.

At the September 30, 2020 hearing, the probate court expressed its frustration with the parties and the attorneys: "I have to say this is probably the worst trust case I've ever seen litigated . . . and to which I share in responsibility for allowing these things to go on and on."  The court described, "There really has been nothing to litigate and yet there has been years and tens of thousands, if not more, of bills that are seeking to be paid or have been paid as a result of a case primarily about not much at all."  The probate court noted that at one point there appeared to be a question of fact regarding Elaine's competency when the trust was last amended, but the parties failed to bring forward evidence to support those claims.  The court accused Gallagher of engaging in formal discovery against "the true owner of the Trust."  The court continued:

> [I]t has been a debacle to say the least.  I really feel like, although you all have been polite and followed the decorum of a courtroom, in terms of substance you've treated this court and me like a rube that can just continue to churn and churn and churn and churn.  That's ending today.
>
> I find that there has been nothing of substance brought to this Court.  There have been representations made that, oh, we're so close to a settlement. . . .  [T]hen I get this one[-]inch thick settlement agreement.  And within months I get motions to modify the settlement.  Objection to the settlement.  It's . . . been completely unnecessary.

The court then expressed concern for Elaine's assets, noting that the $5 million trust had dwindled to $1.5 million "[a]nd nobody knows how the hell that happened."  The court described the current, continued dispute as a "frenzy on the money that's left."

> Everybody is here now[,] when I've had enough of the case[,] to get paid.  Okay.  I guess we've taken [Judge] Dignan as far as we can possibly take him.  Let's cash in and get a check. . . .  I warned everybody.  Everybody politely acknowledged that [they] do not consider the corpus of the Jaye Trust a depository in which any future attorney fees are going to be held.  That I will follow EPIC and the Trust Code . . . .  But one thing is clear[,] that attorney fees have to have advanced the cause of the . . . trust.  And, therefore, those of you who maybe represent contingent beneficiaries I - - I'm not quite [sure] I even understand where the standing is.  Some of you are, we have layers of lawyers that represented the same individual.  And those are all gonna be scrutinized.
>
> But the bottom line is, on my own motion, right now I'm - - I'm going to dissolve and distribute the body of the Trust.  This will go no further other than to the Court of Appeals if you are interested.

The probate court appointed Amir Abu-Aita to serve as Elaine's conservator, although the court noted that there was no evidence that Gallagher had engaged in any wrongdoing.  The court

ordered all interested parties to submit payment requests to Abu-Aita. Abu-Aita in turn would conduct an inventory and then made a recommendation to the court "on the issues that remain that have been filed." The court concluded:

> But, I've gone too far. I think the - - Court has been treated like a fool that will just keep churning and churning and accepting representations that, oh, we're this close to settling it only to have 9 motions filed after that.
>
> This is done. I don't know what [Elaine] has left, but it belongs to her. . . . Mr. Abu-Aita will also be the Trustee of the Estate.

The court entered an order "dissolving" the trust and distributed all trust assets to Abu-Aita as conservator and successor trustee for the purpose of winding up the trust. Abu-Aita would then distribute funds as necessary for Elaine's care and to maintain the trust assets.

Gallagher appealed the probate court's order dissolving the trust and removing him as trustee, contending that the court failed to follow statutory notice and substantive requirements. Chris Jaye filed a cross-appeal fully joining these issues. And the various attorneys awaiting payment filed cross-appeals of their own.

## II. DISSOLUTION OF TRUST

The probate court's "dissolution" of the trust violated the plain language of EPIC. We interpret and apply statutes according to their plain language to effectuate the intent and purpose of the Legislature. *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 180; 934 NW2d 674 (2019).

MCL 700.7412 of the EPIC governs the termination of trusts as follows:

> (1) The court may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration.
>
> (2) *The court may* modify the administrative or dispositive terms of a trust or *terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the settlor's stated purpose or, if there is no stated purpose, the settlor's probable intention*.
>
> (3) If a trust is terminated under this section, the trustee shall distribute the trust property as ordered by the court.
>
> (4) *Notice of any proceeding to terminate or modify a trust shall be given in the manner described in section 7411(3)*. [Emphases added.]

MCL 700.7411(3) provides, in turn:

> Notice of any proceeding to terminate or modify a trust must be given to the settlor, the settlor's representative if the petitioner has a reasonable basis to believe the settlor is an incapacitated individual, the trust director, if any, a powerholder

-4-

described in subsection (1)(b) or (c), if any, the trustee, and any other person named in the terms of the trust to receive notice of such a proceeding.

The court provided no notice to any of the parties identified in MCL 700.7411(3) before terminating Elaine's trust on its own motion. Karen had requested dissolution of the trust more than a year earlier, but the parties thereafter settled several issues and the matter had not been raised again. September 30, 2020 was noticed for a hearing regarding the attorneys' petitions for payment, as well as the four motions/petitions raised by the parties. Neither the interested parties nor Elaine's counsel had any opportunity to meaningfully respond to the court's surprise decision. This error alone warrants reversal of the probate court's decision.

MCL 700.7412(2) allows for termination of a trust if termination is necessary to further the settlor's intent in light of circumstances not anticipated by the settlor. The Jayes may have anticipated some dispute between their children. But they could not have foreseen this extensive litigation and ever-mounting attorney fees related to the management of their trust property. But the court failed to comply with MCL 700.7412(2)'s requirement that the trust's termination "will further the settlor's stated purpose, or if there is no stated purpose, the settlor's probable intention." Absent ambiguity, a settlor's intent must be ascertained from the language of the trust itself. *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012).

The trust states that Edward and Elaine intend "to make provisions for the care and management of certain of their present properties and for the ultimate distribution of the Trust properties." During their lifetimes, Edward and Elaine "shall be entitled to all income and principal of their community property without limitation," the trust provides. But if either were deemed "physically or mentally incapacitated," the trustees were directed to pay from the trust "the amounts of net income and principal necessary . . . for the proper health, support and maintenance" of the incapacitated party. The court's order protected Elaine during the remainder of her life by providing for continued payments for her health, support and maintenance. However, this was not the only purpose of the trust.

Each iteration of the trust provided for the distribution of the Jayes' property upon their deaths. These estate plans did not coincide with the rules of intestate succession. For example, the February 5, 2010 third amendment of the trust provided for the distribution of show dogs and a sum certain to James and Sally Byron and half of a farm in Iron County to Florence Dravecky. Although the remaining assets were to be divided equally by the Jayes' three children, Karen's share would remain in trust. By dissolving or terminating the trust, the court left Elaine intestate. She is not competent to execute a new will and her wishes cannot be effectuated.

Absent the notice and failing to further Elaine's plainly stated intent in the trust, the probate court could not dissolve the trust as it did. The court's order is reversed and the trust must be reinstated.[1]

---

[1] We note that the law firms on appeal make various arguments about why their claims for fees should be accepted and paid. The probate court will address these issues on remand and we will not analyze them in the first instance.

-5-

## III. REMOVAL OF TRUSTEE

Chris and Gallagher also challenge Gallagher's removal as trustee. We review for an abuse of discretion a court's decision to remove a trustee. *Rhea Brody Living Trust v Deutchman*, 321 Mich App 304, 319; 910 NW2d 348 (2017).

MCL 700.7706(1) provides that a court may remove a trustee on its own motion. The power is not absolute, however. MCL 700.7706(2) provides for removal "if 1 or more of the following occur":

> (a) The trustee commits a serious breach of trust.

> (b) Lack of cooperation among cotrustees substantially impairs the administration of the trust.

> (c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust.

> (d) There has been a substantial change of circumstances, the court finds that removal of the trustee best serves the interests of the trust beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

The court did not identify any viable basis for its decision to remove Gallagher as trustee. Instead, the court specifically indicated that it had *not* found that Gallagher acted improperly. The court may have believed that Gallagher had been pushed around by the competing parties and that a change would serve Elaine's best interests. However, the court made no record finding to that effect. On remand, if the court decides to relieve Gallagher of his post, the court must refer to MCL 700.7706(2) and support its ruling.

## IV. JUDICIAL DISQUALIFICATION

Finally, Chris and Gallagher seek to have Probate Court Judge Dignan disqualified and to have this matter assigned to a new judge on remand. MCR 2.003(C)(1) provides for the disqualification of a judge, in relevant part, when:

> (a) The judge is biased or prejudiced for or against a party or attorney.

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

But judicial impartiality is presumed and the challenging party bears a heavy burden to establish otherwise. *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996).

Judge Dignan made several strong comments at the September 30, 2020 hearing when he terminated the trust. The comments were directed at *all* the parties and attorneys; no one was singled out. Reviewing the voluminous record in this lengthy and highly contentious matter, we can understand Judge Dignan's frustrations and concerns. The glut of lawyers making substantial claims in this dwindling estate undoubtedly perturbed the court and complicated the proceedings. A strong hand was needed to control the proceedings and put it back on track. Judge Dignan's language demonstrated that he was strengthening his hand.

We do not believe that Judge Dignan's comments revealed an inability to fairly judge and control the proceedings on remand. With a bit of verbal caution, we are confident that Judge Dignan's resolve will fairly and equitably direct this action to completion while protecting Elaine's interests. Assigning a new judge at this late date would require expending even more attorney fees so that the parties could educate the bench on the lengthy history of this case and the issues remaining. That delay and expense would benefit no one. Accordingly, Judge Dignan will continue to preside over these proceedings on remand.

We reverse the probate court's order dissolving the trust and removing Gallagher as trustee and remand for continued proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Anica Letica