*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGERICA L. DOWNER,

      Plaintiff-Appellee,

v

NAKAYLIN RENA-YVONNE ASHBURN,

      Defendant,

and

USA UNDERWRITERS,

      Defendant-Appellant,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

      Defendant-Appellee.

UNPUBLISHED
May 30, 2024

No. 363824
Wayne Circuit Court
LC No. 22-000883-NI

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

      Plaintiff-Appellee,

v

USA UNDERWRITERS INSURANCE
COMPANY,

      Defendant-Appellant,

and

No. 363831
Wayne Circuit Court
LC No. 22-001462-NF

-1-

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY and MICHIGAN
ASSIGNED CLAIMS PLAN,

        Defendants-Appellees,

and

UNNAMED ASSIGNEE OF THE MICHIGAN
ASSIGNED CLAIMS PLAN,

        Defendant.

_____

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

        Plaintiff-Appellant,

v

USA UNDERWRITERS INSURANCE
COMPANY, MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY, and
MICHIGAN ASSIGNED CLAIMS PLAN,

        Defendants-Appellees,

and

UNNAMED ASSIGNEE OF MICHIGAN CLAIMS
PLAN,

        Defendant.

_____

No.  366081
Wayne Circuit Court
LC No.  22-001462-NF

Before: FEENEY, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

     In Docket Nos. 363824 and 363831, defendant USA Underwriters Insurance Company ("USA") appeals by leave granted the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in each of two consolidated cases, one brought by plaintiff Angerica L. Downer ("Downer") and the other brought by plaintiff VHS of Michigan, Inc., doing business as Detroit Medical Center ("DMC"). In Docket No. 366081, DMC appeals by leave granted the trial court's order denying its motion for partial

summary disposition under MCR 2.116(C)(10) against USA and defendants-appellees, Michigan Automobile Insurance Placement Facility ("MAIPF") and Michigan Assigned Claims Plan, regarding whether Downer was entitled to unlimited personal protection insurance (PIP) coverage. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On March 16, 2021, Downer applied for a no-fault automobile insurance policy from USA. On the application form, Downer checked "No" in response to the question, "In the past three (3) years, have you . . . had your driver's license suspended or revoked?" However, Downer's driver's license was suspended from October 19, 2018 until December 6, 2018. Downer also elected PIP benefits at a coverage limit of $50,000, but this option is available only to individuals who are enrolled in Medicaid, MCL 500.3107c(1)(a). Downer was not enrolled in Medicaid at the time she submitted her application. USA issued the policy without discovering that Downer had provided incorrect information in her application.

On May 12, 2021, Downer was injured in an automobile accident with another driver, Nakaylin Ashburn. DMC treated Downer for her injuries and submitted bills to USA for reimbursement under Downer's no-fault policy. On May 24, 2021, USA obtained Downer's driving record and discovered her previous driver's license suspension. On July 16, 2021, USA informed Downer that her insurance policy was being rescinded *ab initio*, as of the date it was issued. Downer subsequently brought suit against USA, Ashburn, and the MAIPF. DMC brought a separate provider's action against USA under MCL 500.3112(1). The trial court consolidated the two actions.

During the proceedings below, USA moved for summary disposition against Downer and the MAIPF under MCR 2.116(C)(10), arguing that it was entitled to rescind Downer's policy on the basis of fraud.[1] Downer and MAIPF argued in response that there was a question of fact as to whether Downer knowingly misrepresented that her driver's license had not been suspended in the three-year period preceding her application. Downer testified in her deposition that she believed that only her license plate had expired, not that her driver's license had been suspended. The trial court concluded that there was a question of fact regarding whether Downer knowingly made a misrepresentation. It therefore denied USA's motion in an order that contained the caption for both lower court actions. USA filed separate applications for leave to appeal, one in the case

---

[1] The caption of this motion listed DMC as an opposing party and listed both lower court case numbers, but the register of actions for DMC's action does not indicate that the motion was filed in that action. The electronic proof of service likewise does not indicate that the motion was ever served on DMC's counsel. DMC did not respond to the motion or appear at the motion hearing.

brought by Downer and the other in the case brought by DMC. This Court granted the applications in both cases.[2]

DMC moved for partial summary disposition under MCR 2.116(C)(10) on the issue of the applicable coverage limit for Downer's PIP benefits. DMC argued that Downer chose a benefit limit of $50,000, which was only available to Medicaid enrollees, but Downer was not a Medicaid enrollee. DMC argued that the policy should be regarded as providing for unlimited PIP benefits under MCL 500.3107c(4). USA argued that the court should apply a rebuttable presumption that $50,000 was the correct level under MCL 500.3107c(3). The trial court denied DMC's motion. DMC now appeals that decision by leave granted in Docket No. 366081.[3]

## II. ANALYSIS

## 1. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The parties in these cases each moved for summary disposition under MCR 2.116(C)(10). Summary disposition may be granted under MCR 2.116(C)(10) "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). The reviewing Court must "review the pleadings, affidavits, and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of reasonable doubt." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d 180 (2005). "If the moving party properly supports his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists." *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks, brackets, and citation omitted). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Lowrey*, 500 Mich at 7 (citation omitted).

To the extent that this case presents issues involving the interpretation and application of a statute, such issues involve questions of law that this Court reviews de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

---

[2] *Downer v USA Underwriters*, unpublished order of the Court of Appeals, entered April 6, 2023 (Docket No. 363824); *VHS of Mich, Inc v USA Underwriters Ins Co*, unpublished order of the Court of Appeals, entered April 6, 2023 (Docket No. 363831).

[3] *VHS of Mich, Inc v USA Underwriters Ins Co*, unpublished order of the Court of Appeals, entered July 3, 2023 (Docket No. 366081).

## 2. DOCKET NO. 363824

In Docket No. 363824, USA argues that it was entitled to rescind the insurance policy issued to Downer on the basis of fraud. It therefore contends that the trial court erred by denying its motion for summary disposition in Downer's case. We agree in part.

No-fault insurance policies are subject to mandatory coverage provisions in the no-fault act, and consequently, "the rights and limitations of the coverage are governed by that statute." *Titan Ins Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012). "Insurance policies are contracts and, in the absence of an applicable statute, are subject to the same contract construction principles that apply to any other species of contract." *Id*. at 554. Additionally, "because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Id*. An insurer "may seek to avoid liability under an insurance policy using traditional legal and equitable remedies including cancellation, rescission, or reformation, on the ground of fraud made in an application for insurance, notwithstanding that the fraud may have been easily ascertainable and the claimant is a third party." *Id*. at 572-573. But contractual defenses based on antifraud provisions within an insurance policy are not enforceable to the extent that they are abrogated by statute. *Meemic Ins Co v Fortson*, 506 Mich 287, 302-303; 954 NW2d 115 (2020).

With regard to fraudulent misrepresentation,

in order to justify rescission of PIP coverage with respect to preprocurement misrepresentations, the insurer must be able to demonstrate common-law fraud under equitable principles. It must be shown that: (1) the alleged fraudulent party made a material representation; (2) the representation was false; (3) the person making the representation knew it was false or acted recklessly in making the statement; (4) the person intended that the opposing party should act upon the representation; (5) the opposing party acted in reliance; and so (6) suffered injury. *Titan Ins Co v Hyten*, 491 Mich 547, 567-568; 817 NW2d 562 (2012). [*Howard v LM Gen Ins Co*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 357110); slip op at 4 (footnote and citation omitted).]

Rescission of a policy *ab initio*, which "abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made," is a potential remedy for fraud committed by the insured. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408-409; 919 NW2d 20 (2018). However, because a claim to rescind a transaction is equitable in nature, and equitable relief is not a matter of right, an insurer does not have an absolute right to rescission as a remedy for said fraud. *Id*. Rather, a trial court must balance the equities to determine whether the insurer is entitled to rescission, and should not grant rescission if the result would be unjust or inequitable. *Id*. at 410-411. See also *VanDyke Spinal Rehabilitation Center, PLLC v USA Underwriters*, ___ Mich App ___, ___; ___NW3d___ (2024) (Docket No. 365848); slip op at 8-9 ("regardless of the basis for seeking the remedy of rescission, the trial court was obligated to balance the equities in determining whether defendant was entitled to rescission").

Here, USA asserts that there is no question of fact that Downer deliberately misrepresented that her driver's license had not been suspended in the three-year period preceding her application.

Alternatively, USA argues that Downer at least made the representation in reckless disregard of the truth. Downer has consistently denied that the misrepresentation was deliberate. She claimed that it was her understanding that only her license plate had expired, not that her driver's license was suspended. We agree with the trial court that Downer established a genuine issue of material fact regarding whether she knowingly or recklessly misrepresented that her driver's license had not been suspended within the three-year period preceding her application. On the basis of Downer's deposition testimony, a reasonable juror could conclude that Downer confused the suspension of her driver's license with the expiration of her license plate, and therefore, did not knowingly misrepresent that she had not had her driver's license suspended in the past three years. Similarly, because Downer did not purport to make a representation involving a subject of which she had no knowledge, but rather a subject that she allegedly misunderstood, a reasonable juror could disagree with USA's characterization of Downer's response as having been made in reckless disregard of the truth.

As previously noted, USA alternatively argues that Downer's innocent misrepresentation is grounds for rescission. USA did not expressly argue in its motion for summary disposition that Downer made an innocent misrepresentation that supported rescission of its policy. Instead, the argument was first raised in a motion for reconsideration. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 519; 773 NW2d 758 (2009). However, this Court may overlook preservation requirements if the failure to consider an issue would result in manifest injustice, consideration is necessary for a proper determination of the case, or the issue involves a question of law and the facts necessary for its resolution have been presented. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 3. On that basis, we will briefly consider the issue.

Both innocent misrepresentation and intentional misrepresentation can be the basis for rescission of a no-fault insurance policy. *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016); *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). An innocent misrepresentation occurs when a party relies upon and is harmed by a false representation, regardless of whether the person making the misstatement acted in good faith. *Roberts v Saffell*, 280 Mich App 397, 405; 760 NW2d 715 (2008). Innocent misrepresentation requires proof that: "(1) the defendant made a material representation, (2) the representation was false, (3) the defendant made it with the intention of inducing reliance by the plaintiff, (4) the plaintiff acted in reliance on the representation, and (5) the plaintiff thereby suffered an injury that benefited the defendant." *Abdelmaguid v Dimensions Ins Group*, ___ Mich App ___; ___ NW3d ___ (Docket No. 361674); slip op at 6 (quotation marks and citation omitted).

Downer argues that this Court expressly stated that an innocent misrepresentation is no longer grounds for rescission of a no-fault insurance policy in *Howard*, ___ Mich App at ___; slip op at 3-4. However, *Howard* dealt only with fraudulent misrepresentation affecting an innocent third party. The *Howard* Court expressly opined that "the source of the right to rescind (mandatory) PIP coverage must flow from the no-fault act or the *common law*, not the policy terms." *Id.*; slip op at 3 (emphasis added). Innocent misrepresentation is a common law doctrine. See *Titan Ins Co*, 491 Mich at 567 ("Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of "fraud"

-6-

. . . . includ[ing] . . . innocent misrepresentation[.]"). Thus, we disagree with Downer's argument that innocent misrepresentation is no longer grounds for rescission of a contract after *Howard*.

Nevertheless, we again note that this issue was first raised in USA's motion for reconsideration. Regardless of whether a genuine issue of material fact exists as to whether Downer made an innocent misrepresentation on her insurance application, whether to allow rescission still requires the trial court to engage in a balancing of the equities. *Bazzi*, 502 Mich at 410-411. We decline to assume the trial court's role in this process and instead exercise our discretion to remand this matter to the trial court. See *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 325; 503 NW2d 758 (1993) (noting that "[i]t would be imprudent for this Court to address the merits of [an] issue without first affording the trial court an opportunity to do so."); *Gottesman v Harper Woods*, 508 Mich 942, 964 NW2d 365 (2021) ("Because the first issue was not previously addressed by the trial court, the Court of Appeals may, in its discretion, remand to the trial court to resolve this issue in the first instance."). On remand, the trial court should address the issue on the merits, as though it was properly raised and briefed in the first instance.

3. DOCKET NO. 363831

As previously discussed, DMC brought a separate action for recovery of PIP benefits for its services in treating Downer's injuries related to her automobile accident pursuant to MCL 500.3112(1), which permits a health care provider to "make a claim and assert a direct cause of action against an insurer . . . to recover overdue benefits payable for charges or products, services, or accommodations provided to an injured person." On appeal in Docket No. 363831, USA argues that a decision that it is entitled to rescind its policy with respect to Downer also applies to prevent DMC from pursuing its own claim for recovery of PIP benefits. We disagree.

Although the trial court entered its order denying USA's motion for summary disposition in both lower court cases, the lower court record does not indicate that USA filed its motion for summary disposition in the separate action brought by DMC. The electronic proof of service filed by USA does not indicate that the motion was served on DMC's counsel. Thus, DMC did not respond to the motion or appear at the motion hearing. Since there is no indication that DMC had proper notice of the motion or an opportunity to respond, we find it appropriate to affirm the trial court's order denying USA's motion with respect to DMC. In any event, we disagree with USA's argument that a determination that it is entitled rescission with respect to Downer also controls whether it is entitled to rescission with respect to DMC.

Here, there is no claim that DMC had knowledge of Downer's misrepresentation. A defendant no-fault insurer does not have an absolute right to rescind a no-fault policy *ab initio* against an innocent party. As previously stated, the trial court must instead balance the equities to determine whether the insurer is entitled to rescission. *Bazzi*, 502 Mich at 410. "Moreover, when two equally innocent parties are affected, the court is required, in the exercise of its equitable powers, to determine which blameless party should assume the loss." *Id*. at 410-411 (quotation marks, brackets, and citation omitted).

In *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906; 919 NW2d 294 (2018) (MARKMAN, C.J., concurring), then-Chief Justice MARKMAN, in a concurring statement, listed factors a court should consider in analyzing the equities related to the remedy of

rescission in cases involving innocent third parties. The factors are: (1) "the extent to which the insurer, in fact, investigated or could have investigated the subject matter of the fraud before the innocent third party was injured"; (2) "the specific relationship between the innocent third party and the fraudulent insured"; (3) "the precise nature of the innocent third party's conduct in the injury-causing event"; (4) "whether the innocent third party possesses an alternative avenue for recovery absent enforcement of the insurance policy"; and (5) "whether enforcement of the insurance policy would merely relieve the fraudulent insured of what would otherwise be the insured's personal liability to the innocent third party." *Id*. at 906-907. This Court subsequently adopted these factors in *Pioneer State Mut Ins Co*, 331 Mich App 396, 405, 411; 952 NW2d 586 (2020), concluding that "they present[] a workable framework as well as necessary guidance to the lower courts and litigants." See also *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 337 Mich App 88, 100; 972 NW2d 325 (2021) (recognizing this Court's adoption of the factors identified by Justice MARKMAN in *Farm Bureau Gen Ins Co*).

In *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276; 983 NW2d 401 (2022), an injured party assigned his claim for PIP benefits to the plaintiff healthcare providers. The injured party also filed his own claim against the defendant insurer. The defendant insurer successfully moved for summary disposition against the injured party on the ground that he was not entitled to insurance coverage because someone else maintained insurance coverage on the vehicle. *Id*. at 280-281. The defendant then moved for summary disposition against the plaintiff healthcare provider on the ground that its claims were barred by the doctrines of res judicata and collateral estoppel. The defendant argued that the trial court's determination that the injured person was not entitled to insurance coverage precluded the provider from relitigating that issue. *Id*. at 281. Our Supreme Court stated:

> Res judicata bars a second action on the same claim if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. . . . Whereas res judicata involves preclusion of entire claims, collateral estoppel focuses on specific issues within an action. . . . The elements of collateral estoppel are similar: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment, (2) the parties or privies must have had a full [and fair] opportunity to litigate the issue, and (3) there must be mutuality of estoppel. . . . One of the critical factors in applying . . . collateral estoppel involves the determination of whether the respective litigants were parties or privy to a party to an action in which a valid judgment has been rendered. [*Mecosta Co Med Ctr*, 509 Mich at 282-283 (quotation marks and citations omitted; alteration in original).]

The Court focused on whether the plaintiff providers were privies of the injured person "with respect to the judgment that was entered against him after the assignment." *Id*. at 283. The Court noted that a relationship based on an assignment of rights is generally deemed to be one of privity. *Id*. at 284. "But the mere succession of rights to the same property or interest does not, by itself, give rise to privity with regard to subsequent actions by and against the assignor." *Id*. "When the litigation involving the assignor occurs after the assignment, the rights could not yet have been affected by the litigation at the time they were transferred to the assignee." Accordingly, "a judgment entered after the assignment does not bind the assignee because the assignee is not in

privity with the assignor with respect to that judgment." *Id*. at 285. The Court concluded that the plaintiff assignees were not in privity with the injured party "with respect to the judgment that was rendered against him after he had assigned the present PIP claim to plaintiffs." *Id*. at 290.

In *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 359681), the insured failed to disclose his wife as a driver of his insured vehicle. *Id*. at ___; slip op at 1-2. The plaintiff healthcare provider treated injuries the insured sustained in an accident. The insured assigned his claim for PIP benefits to the plaintiff healthcare provider. *Id*. at ___; slip op at 2. The insured and the healthcare provider both brought actions against the defendant insurer for no-fault benefits. The trial court granted rescission of the policy for the insurer in the insured's lawsuit on the ground that he committed a material misrepresentation by failing to disclose his wife as a driver. *Id*. The trial court then granted summary disposition to the defendant insurer in the healthcare provider's action on grounds of res judicata and collateral estoppel. *Id*.

On appeal, the defendant insurer argued that *Mecosta* was distinguishable "because the prior judgment granted rescission, which nullified the assignment because it rendered the insurance contract void *ab initio*." This Court disagreed, stating that "[r]escission is an equitable doctrine" whose "operation is not automatic." The Court further noted that rescission "is an equitable doctrine that courts use relying on a legal fiction to restore the parties to the relative positions they would have occupied had the contract never been made, after balancing the equities." *Id.* at ___; slip op at 6. The Court stated that the trial court in the insured's proceeding "avoided this balancing by finding that [the insured] made the misrepresentation and therefore was not an innocent party." *Id.* at ___; slip op at 7. But the trial court did not consider the healthcare provider's interest when it determined that rescission was a just and equitable remedy. The Court stated that "[r]elying on rescission to circumvent *Mecosta Co Med Ctr* and apply res judicata (and collateral estoppel) to bar C-Spine's arguments against rescission would upend both of these doctrines." *Id.* This Court remanded the case to the trial court for further proceedings. *Id*. at ___; slip op at 7-8.

USA argues that *Mecosta Co Med Ctr* is distinguishable from the instant case because its analysis of privity and assigned claims in the context of res judicata and collateral estoppel does not apply when a healthcare provider brings a direct action under MCL 500.3112(1). However, in *C-Spine Orthopedics*, this Court stated that a healthcare provider has the right to present its own challenges to rescission. We are not persuaded that the healthcare provider's assignee status in *C-Spine Orthopedics* is materially distinguishable from DMC's status as a direct-action plaintiff in this case. Although USA denies that res judicata and collateral estoppel are relevant to this case, the substance of USA's argument is that if it is entitled to rescind its policy as to Downer, the policy must necessarily also be rescinded as to a healthcare provider. In other words, a decision in Downer's action would be controlling in DMC's separate action. This Court in *C-Spine Orthopedics* expressly decided that rescission could not automatically operate to preclude a healthcare provider's suit because the provider was entitled to argue that rescission was not "a just and equitable remedy." Moreover, as indicated earlier, DMC never had the opportunity to respond to USA's summary disposition motion because the motion was never properly filed in DMC's action or served on DMC. Under these circumstances, we affirm the trial court's denial of USA's motion for summary disposition with respect to DMC, without prejudice to USA filing an appropriate motion against DMC, and allowing DMC to present its case for balancing the equities against rescission.

## 4. DOCKET NO. 366081

Finally, in Docket No. 366081, DMC argues that the trial court erred by denying its motion for partial summary disposition regarding whether Downer was entitled to unlimited PIP coverage under her policy with USA where she selected the $50,000 coverage option in her application, but she was not eligible for that option because she was not enrolled in Medicaid. We hold that the trial court properly denied DMC's motion on this issue and that further proceedings are necessary to determine the appropriate coverage limitation for any applicable PIP coverage.

"In 2019, the Michigan Legislature made sweeping changes to Michigan's no-fault statutes when it enacted 2019 PA 21 and 2019 PA 22." *Andary v USAA Cas Ins Co*, 512 Mich 207, 218; 1 NW2d 186 (2017). These changes included the addition of MCL 500.3107c, which eliminated mandatory unlimited PIP coverage and allows Michigan insureds to choose a limited level of PIP coverage for a lower premium. At issue here is the interpretation of MCL 500.3107c.

"The goal of statutory interpretation is to determine and apply the intent of the Legislature." *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; 997 NW2d 481 (2022). "The first step in determining legislative intent is to examine the specific language of the statute." *Id*. Clear and unambiguous statutory language must be applied as written. Judicial construction of clear and unambiguous statutory language is not required or permitted. *Id*. "The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole." *Id*. "This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose." *Id*. (citation omitted). "[A] court must avoid a construction that would render any part of the statute surplusage or nugatory." *Yellow Tail Ventures, Inc v City of Berkley*, 344 Mich App 689, 701; 1 NW3d 860 (2022) (quotation marks and citation omitted). "Nothing may be read into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Save Our Downtown v City of Traverse City*, 343 Mich App 523, 534; 997 NW2d 498 (2022) (quotation marks and citation omitted).

MCL 500.3107c provides, in pertinent part:

(1) Except as provided in sections 3107d[4] and 3109a,[5] and subject to subsection (5), for an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured shall, in a way required under section 3107e[6] and on a form approved by the director, select 1 of the following coverage levels for personal protection insurance benefits under section 3107(1)(a):

---

[4] MCL 500.3107d allows an insured to elect not to maintain PIP coverage if the insured has qualified health coverage.

[5] MCL 500.3109a governs deductibles and exclusions offered by the insurer.

[6] MCL 500.3107e prescribes procedures for delivering forms and making coverage elections by signing paper forms or using electronic alternatives.

(a) A limit of $50,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a). The selection of a limit under this subdivision is only available to an applicant or named insured if both of the following apply:

(*i*) The applicant or named insured is enrolled in Medicaid, as that term is defined in section 3157.

(*ii*) The applicant's or named insured's spouse and any relative of either who resides in the same household has qualified health coverage, as that term is defined in section 3107d, is enrolled in Medicaid, or has coverage for the payment of benefits under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

(b) A limit of $250,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(c) A limit of $500,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(d) No limit for personal protection insurance benefits under section 3107(1)(a).

(2) The form required under subsection (1) must do all of the following:

(a) State, in a conspicuous manner, the benefits and risks associated with each coverage option.

(b) Provide a way for the applicant or named insured to mark the form to acknowledge that he or she has read the form and understands the options available.

(c) Allow the applicant or named insured to mark the form to make the selection of coverage level under subsection (1).

(d) Require the applicant or named insured to sign the form.

(3) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

(4) If an insurance policy is issued or renewed as described in subsection (1), the applicant or named insured has not made an effective selection under subsection (1), and a presumption under subsection (3) does not apply, subsection (1)(d) applies to the policy.

(5) The coverage level selected under subsection (1) applies to the named insured, the named insured's spouse, and a relative of either domiciled in the same household, and any other person with a right to claim personal protection insurance benefits under the policy.

In sum, MCL 500.3107c(1) allows an insured to choose unlimited PIP coverage, or coverage limited to $50,000, $250,000, or $500,000. However, the $50,000 option is available only to insureds who are enrolled in Medicaid and meet other eligibility requirements. The parties do not dispute that Downer was not enrolled in Medicaid when she submitted her application. The statute does not specify how an insurer is to verify an insured's Medicaid enrollment. However, MCL 500.3107c(3) provides a rebuttable presumption for cases where an insured "has not made an effective selection" from the PIP coverage options, but the named insured paid a premium or premium installment. The statute creates a rebuttable presumption that the amount of the premium "accurately reflects the level of coverage applicable." If the presumption under Subsection (3) does not apply, MCL 500.3107c(4) provides that the unlimited coverage option applies.

Preliminarily, we note that USA's and the trial court's references to "reformation" of the policy are mistaken. "Reformation is an equitable remedy that is available for contracts if the writing fails to express the intentions of the parties . . . as the result of accident, inadvertence, mistake, fraud, or inequitable conduct." *In re Rhea Brody Living Trust*, 321 Mich App 304, 324; 910 NW2d 348 (2017), vacated in part on other grounds 501 Mich 1094 (2018). DMC's assertion that Downer's improper election of the $50,000 coverage option caused the default option of unlimited PIP benefits to take effect under MCL 500.3107c(4) is not based on equitable principles, but rather on its construction of MCL 500.3107c.

The parties' disagreement concerns the phrase "has not made an effective selection" in MCL 500.3107c(3). USA argues that this phrase includes situations where an insured chooses the $50,000 limit, but is not enrolled in Medicaid. DMC interprets the phrase narrowly, applying "where the applicant has failed to properly mark the selection form and there is doubt regarding *which* selection was intended by the applicant." This interpretation reflects how the $50,000 limit in Subsection (1)(a) is distinct from the levels offered in Subsections (1)(b) through (d). The options of a $250,000 limit, a $500,000 limit, or unlimited coverage are available to all insureds, but the $50,000 limit is only available to insureds who satisfy certain enumerated eligibility requirements. However, MCL 500.3107c(3) and (4) do not distinguish between an "effective selection" of the $50,000 option from the other available options. Thus, DMC's interpretation improperly reads into the statute a distinction not expressed by the statutory language. *Save Our Downtown*, 343 Mich App at 534. DMC's argument also shifts to USA the consequences of Downer's improper selection on the ground that USA could have discovered the error if it had verified Downer's Medicaid enrollment before issuing her a policy with a $50,000 coverage limit under Subsection (1)(a).

We find instructive this Court's recent decision in *Bronson Health Care Group, Inc v Esurance Prop and Cas Ins Co*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 363486). In that case, the insured selected the $250,000 PIP coverage limit under MCL 500.3107c(1)(b). The plaintiff healthcare provider's treatment of the insured exceeded that limit. The plaintiff argued that the defendant insurer failed to comply with statutory mandates before issuing the insured her policy and failed to obtain a proper electronic signature. *Id*. at ___; slip op at 2. The

defendant argued that the plaintiff could not overcome the rebuttable presumption of MCL 500.3107c(3) because the insured made a premium payment corresponding to the $250,000 coverage limit. *Id*. at ___; slip op at 3. The defendant provided an affidavit by its underwriting specialist, which stated that the insured's premium payment corresponded to the $250,000 limit. *Id*. at ___; slip op at 3. The trial court rejected the plaintiff's argument that the insured's selection was ineffective because the insured did not properly sign the electronic form, but "alternatively reasoned that [the insured] paid the premium associated with a $250,000 coverage limit, so the presumption under MCL 500.3107c(3) applied and had not been rebutted." *Id*. at ___; slip op at 4.

Regarding the plaintiff's argument that the insured's selection was ineffective because the defendant failed to provide a PIP selection form before the insured purchased the policy, this Court noted that guidelines published by the Department of Insurance and Financial Services (DIFS) stated that carriers are required to provide a PIP selection form "at the time of new business," but concluded that the DIFS guidelines were not binding and that DIFS's interpretation was " 'clearly wrong' because it adds a requirement to the statute that is not discernible from the statute's text." *Id*. at ___; slip op at 7. Regarding whether the insured electronically signed the PIP selection form, this Court noted that the defendant submitted a copy of the form that contained the insured's electronic signature, but concluded that "[t]he fact that [the insured's] name appears on the document does not by itself establish that the electronic signature was 'the act of' the insured." *Id.* at ___; slip op at 8. This Court also rejected the plaintiff's argument that summary disposition was proper because the defendant failed to provide competent proof that the signature on the selection form was the insured's signature. *Id.* at ___; slip op at 9. Although this Court observed that the defendant provided the plaintiff with "IT metadata showing IP addresses," neither party hired an expert to make sense of the evidence, and it was unclear what the evidence established, if anything. *Id.* Accordingly, this Court remanded for further discovery on this issue. *Id*. This Court then considered the applicability of MCL 500.3107c(3) and whether a rebuttable presumption existed under that statute. This Court stated:

> Reading the language of the statute as written, it provides that if (1) a policy is issued as described in MCL 500.3107c(1), and (2) the insured did not make an effective selection for PIP coverage under that subsection, but (3) the insured still made a premium payment, then there is a rebuttable presumption that the level of coverage corresponds to the premium payment made. For example, if an insurer issues a policy under MCL 500.3107c(1) and the insured fails to make an effective selection of PIP coverage under that subsection, but the insured made a premium payment for a policy with a $500,000 limit for PIP coverage, then there is a rebuttal presumption that the policy had a $500,000 limit for PIP coverage. [*Id*. at ___; slip op at 9.]

This Court rejected the plaintiff's argument "that the presumption in MCL 500.3107c(3) only applies where '[t]he only thing that is unclear is which of the possible coverage levels the insured intended to choose.' " *Id*. at ___; slip op at 10. We instead concluded that this interpretation "has no basis in the language of the statute," explaining:

> If all three preconditions are met, then "there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1)." MCL 500.3107c(3). Plaintiff's

interpretation, however, changes the second precondition to only situations in which "it is unclear from the insured's markings on the form which level of coverage the insured actually chose." However, if the Legislature intended to limit MCL 500.3107c(3) to situations in which the insured's selection of coverage was unclear, it could have used language reflecting that intent. That the Legislature in MCL 500.3107c(3) did not limit that subsection's application to the single situation identified by plaintiff seems to run against plaintiff's argument. That is, it suggests that the Legislature intended for MCL 500.3107c(3) to apply to any situation in which MCL 500.3107c(1) was not followed to the letter (and consequently the insured did not make "an effective selection under [MCL 500.3107c(1)]", but the parties to the policy nevertheless had an apparent understanding about the level of coverage purchased as demonstrated by the payment of a premium that corresponds to that level of coverage. [*Bronson*, slip op at 10.]

This Court further noted that the thrust of the plaintiff's arguments were not related to the statute, but instead questioned whether this Court's interpretation of the statute was bad policy, but held that such concerns were the province of the Legislature. *Id*. at ___; slip op at 10-11.

> This Court clarified the application of the rebuttable presumption under MCL 500.3107c(3) in controversies arising under the statute:
>
>> It also bears noting:
>>
>>> It is now quite generally held by the courts that a rebuttable or prima facie presumption has no weight as evidence. It serves to establish a prima facie case; but, if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself. [*In re Estate of Kanera*, 334 Mich 461, 473; 54 NW2d 718 (1952) (quotation marks and citation omitted).]
>>
>> That is, a rebuttable presumption like the one in MCL 500.3107c(3) can, as its name suggests, be rebutted. And once the presumption in MCL 500.3107c(3) has been rebutted, the insurer must introduce evidence to show that the insured actually selected the level of coverage argued by the insurer, and the presumption itself no longer acts as evidence of the level of coverage. See *In re Estate of Kanera*, 334 Mich at 473, 54 NW2d 718. [*Bronson Health Care*, ___ Mich App at ___; slip op at 11.]

"[T]his rebuttable presumption is not self-executing in the sense that, for it to apply, the defendant must establish that the amount of the premium paid accurately reflects the level of coverage." *Id*. at ___; slip op at 12. The Court stated that the defendant failed to timely produce the affidavit verifying the correspondence between the premium payment and failed to list the underwriting specialist on its witness list. *Id*. at ___; slip op at 12. Accordingly, this Court concluded that the

plaintiff was prejudiced by the untimely identification of the witness and was entitled to conduct additional discovery. *Id*. at ___; slip op at 12.

DMC's interpretation of MCL 500.3107c(3) is contradicted by this Court's finding in *Bronson Health Care* that "the Legislature intended for MCL 500.3107c(3) to apply to any situation in which MCL 500.3107c(1) was not followed to the letter . . . but the parties to the policy nevertheless had an apparent understanding about the level of coverage." *Bronson Health Care*, ___ Mich App at ___; slip op at 10. We acknowledge that this case is distinguishable from *Bronson Health Care*, as Downer was not a Medicaid enrollee eligible for the $50,000 coverage option when she applied for auto insurance. However, DMC's interpretation would require reading into the statute a distinction that the Legislature could have, but did not, include in the statute.

DMC opines that under USA's interpretation, the default unlimited coverage provision in MCL 500.3107c(4) will never apply as a practical matter because an insurer will not issue a policy without receiving at least one premium payment. DMC therefore contends that reliance on the premium payment to determine the applicable coverage limit as prescribed in MCL 500.3107c(3) violates the principle of statutory interpretation by rendering MCL 500.3107c(4) meaningless and nugatory. This Court also addressed this argument in *Bronson Health Care Group*, albeit in a different context. The plaintiff provider in *Bronson Health Care* argued that if the defendant insurer's interpretation was correct, "then MCL 500.3107c(1) and (2) were a waste of the Legislature's time" because "an insurance company will virtually never bind coverage without receiving at least an initial installment payment." Therefore, the insurer "could rely on the premium payment . . . to establish the applicable coverage level, even when the applicant had no knowledge of 'the benefits and risks associated with each coverage option' and never signed anything 'to acknowledge that he or she read the form and understands the options available.' " *Bronson Health Care*, ___ Mich App at ___; slip op at 10-11. In other words, the plaintiff argued that insurance companies could disregard the safeguards of MCL 500.3107c(2), allowing insureds to make uninformed choices, but avoid the consequences provided by MCL 500.3107c(4) because the rebuttable presumption under MCL 500.3107c(3) will automatically become available when the uninformed insured pays the premium or premium installment.

The Court in *Bronson Health Care* responded to this argument by stating that it addressed policy concerns that belonged to the Legislature. *Id*. at ___; slip op at 11. The Court further commented that the plaintiff's concerns were speculative. The Court remarked, "Insurance is a highly regulated industry. As such, it seems that an insurer who openly flouts this state's statutory mandates (as plaintiff suggests) will not be selling insurance in Michigan for long." *Id*. at ___; slip op at 11. These statements equally apply to DMC's arguments regarding the potential for abuse in MCL 500.3107c(3).

We agree with DMC, however, that USA failed to properly establish its rebuttable presumption under *Bronson Health Care*. USA did not provide an affidavit to establish that Downer made the premium payment corresponding to the $50,000 coverage level. USA merely argued that if Downer had not paid the premium or installment, it would have defended the claim on that ground. Therefore, remand for further proceedings is necessary. On remand, USA should be granted the opportunity to submit a satisfactory affidavit. If USA satisfies the prima facie case

of a presumption, DMC will then have the opportunity to rebut the presumption as described in *Bronson Health Care*.

In sum, the trial court correctly concluded that the rebuttable presumption provided by MCL 500.3107c(3) can apply to an insurer who issued a policy with a $50,000 coverage limit under MCL 500.3107(1)(a) to an insured who did not meet the statutory eligibility requirements for that level of coverage. However, USA did not properly establish the presumption. On remand, if USA establishes a rebuttable presumption, the trial court should address the issue as described in *Bronson Health Care*. Accordingly, we affirm the trial court's order denying DMC's motion for partial summary disposition on this issue, without prejudice to USA's opportunity to establish the applicability of the rebuttable presumption in MCL 500.3107c(3) and, if that presumption is established, DMC's opportunity to rebut that presumption, consistent with *Bronson Health Care*.[7]

## III. CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Michelle M. Rick

---

[7] DMC also challenges the trial court's statements, when denying its motion for partial summary disposition, that Downer misrepresented her Medicaid enrollment status at the time she submitted her application for no-fault insurance, and that USA was not obligated to investigate Downer's Medicaid enrollment status. However, we agree with USA that these statements are immaterial to a proper construction of MCL 500.3107c.